IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES E. HAMPTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13 C 4672 |
| v. | ) | |
| | ) | |
| DIANNE SCHWARZ, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On November 10, 2014, Plaintiff James E. Hampton, an inmate of the Illinois Department of Corrections ("IDOC"), filed the present two-count First Amended Complaint, by counsel, alleging that Defendants Physician's Assistant Mary Diane Schwarz, Dr. Arthur Funk, and Dr. Everisto Aguinaldo, who are employed by Wexford Health Sources, Inc. ("Wexford"), and certain IDOC employees, namely, Marcus Hardy, Anna McBee, Ester Martin, Sarah Johnson, Lavelle Ashford, Shaun Bass, Cleo Johnson, and Ester Martin violated his Eighth Amendment rights, as well as the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

Before the Court is the IDOC and Wexford Defendants' motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a) and Northern District of Illinois Local Rule 56.1. In response to Defendants' summary judgment motions, Plaintiff does not oppose Defendants' motions with respect to his ADA claims. Further, Plaintiff does not pursue his Eighth Amendment deliberate indifference claim against the individual IDOC Defendants, except for Defendant Hardy. In addition, Plaintiff is not pursuing his deliberate indifference claim against Defendant Wexford or Wexford Defendant Dr. Funk. Accordingly, the only

remaining claim in this lawsuit is Plaintiff's Eighth Amendment deliberate indifference claim against Wexford Defendants Dr. Aguinaldo and Physician's Assistant Schwarz, along with IDOC Defendant Warden Hardy. For the following reasons, the Court grants Defendants' summary judgment motions and dismisses this lawsuit in its entirety.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." *Petty v. City of Chicago,* 754 F.3d 416, 420 (7th Cir. 2014). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite 'specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (citation omitted); *see also* L.R. 56.1(b)(3)(A). Local Rule 56.1(b)(3)(C) "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement ... of any additional facts that require the denial of summary judgment.'" *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012) (citation omitted).

The purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See*

*Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [ ] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009).

With these standards in mind, the Court turns to the relevant facts of this lawsuit.

## II. Relevant Facts

### A. Parties

Plaintiff, James Hampton, is in custody of the IDOC, where he is currently serving a 20 year sentence at Pinckneyville Correctional Center ("Pinckneyville"). (R. 101, Wexford Rule 56.1 Stmt. Facts ¶ 2.) Starting on November 28, 2011, Plaintiff was occasionally incarcerated at Stateville Correctional Center ("Stateville"), more specifically, the Northern Reception and Classification Center ("NRC"), which is an intake and temporary holding facility. (*Id.* ¶¶ 45, 59; R. 111, Pl.'s Rule 56.1 Stmt. Add'l Facts ¶ 7.) Throughout the time period relevant to this lawsuit, IDOC would writ Plaintiff to and from the NRC when Plaintiff had court appearances in Cook County. (R. 131-1, Ex. G, at 69-75.) IDOC employed Defendant Marcus Hardy, who was the Warden at Stateville from December 2009 through December 2012. (R. 103, IDOC Rule 56.1 Stmt. Facts ¶ 4.) In May 2011, Wexford entered into a contract with IDOC to provide specific medical services to inmates, including inmates incarcerated at Stateville and Pinckneyville. (Wexford Stmt. Facts ¶ 34.) Wexford employs Defendant Everisto Aguinaldo, M.D., as a staff physician in the medical facility located within the NRC. (*Id.* ¶ 5.) In addition,

Wexford employs Defendant Mary Diane Schwarz as a physician's assistant at the NRC. (*Id*. ¶ 6.)

### B. Plaintiff's CCDOC Medical History

In June 2007, Plaintiff ruptured his Achilles tendon while he was in custody of the Cook County Department of Corrections ("CCDOC").[1] (Pl.'s Stmt. Facts ¶ 2; Wexford Stmt. Facts ¶ 13.) While a detainee at the CCDOC, various medical personnel treated his Achilles injury. (Pl.'s Stmt. Facts ¶ 4.) Specifically, CCDOC medical personnel prescribed physical therapy and pain medications to Plaintiff and referred Plaintiff to orthopedic specialists at Stroger Hospital of Cook County. (*Id*.) On June 23, 2010, Plaintiff underwent surgery at Stroger Hospital to repair his chronic Achilles tendon rupture. (*Id*. ¶ 3; Wexford Stmt. Facts ¶ 14.) On September 23, 2010, Stroger Hospital's orthopedic clinic released Plaintiff to weight bearing activities, and on January 25, 2011, the orthopedic doctors released Plaintiff from their care, although Plaintiff visited Stroger Hospital's orthopedic clinic thereafter. (Wexford Stmt. Facts ¶¶ 22, 25, 30.) According to Plaintiff, after his surgery, he had difficulty walking and used a cane or a walker. (Pl.'s Stmt. Facts ¶ 5.) Plaintiff nonetheless admits that his pain and disability from his Achilles injury improved after the June 2010 surgery. (R. 109, Hampton Aff. ¶ 7.) On his last visit to Stroger's orthopedic clinic in October 2011, a physician's assistant referred Plaintiff to a pain clinic. (Wexford Stmt. Facts ¶ 32.)

---

[1] Despite the IDOC Defendants' arguments to the contrary, a lay witness need not be a medical doctor to discuss his own health in general terms. *See Collins v. Kibort*, 143 F.3d 331, 337 (7th Cir. 1998); Fed.R.Evid. 701.

4

### C. Plaintiff's Medical Care at the IDOC Facilities

On November 28, 2011, IDOC transferred Plaintiff to the NRC at Stateville. (*Id.* ¶ 55; Pl.'s Stmt. Facts ¶ 7.) According to Plaintiff, during his transfer to Stateville, IDOC personnel confiscated his orthopedic footwear. (Wexford Stmt. Facts ¶ 9.) After being transferred to Stateville's NRC, Wexford Defendant Dr. Aguinaldo initially evaluated Plaintiff, at which time Plaintiff reported that he had continuing pain and disability arising from his Achilles tendon injury. (Pl.'s Stmt. Facts ¶ 8.) Plaintiff informed Dr. Aguinaldo about the medications that the CCDOC medical personnel had prescribed to him and that he had been referred to a pain specialist shortly before arriving at Stateville's NRC. (*Id.*)

On January 20, 2012, Defendant Physician's Assistant Schwarz evaluated Plaintiff regarding his complaints of blood in his stool and the pain associated with his Achilles injury. (*Id.* ¶ 10; Wexford Stmt. Facts ¶ 56.) At the conclusion of the visit, Physician's Assistant Schwarz wrote a permit allowing Plaintiff to purchase special shoes from the commissary and prescribed Flexeril, which is a muscle relaxant, for his Achilles pain. (Wexford Stmt. Facts ¶ 56.) The permit also allowed for Plaintiff to be housed on a lower floor and to sleep on a bottom bunk in his cell. (*Id.*) In addition, at this January 2012 medical examination, Plaintiff told Physician's Assistant Schwarz that the CCDOC had not sent his medical chart to the IDOC. (*Id.* ¶ 57.) Immediately thereafter, Schwarz called the CCDOC in an attempt to get his CCDOC medical records. (*Id.*)

On April 10, 2012, Schwarz performed another physical examination of Plaintiff in anticipation of his transfer to Pinckneyville. (*Id.* ¶ 58.) At that time, Plaintiff reported his prior Achilles surgery and neuropathy of the left foot. (*Id.*) On April 10, 2012, IDOC transferred

5

Plaintiff to Pinckneyville. (*Id*. ¶ 59.) Plaintiff returned to Stateville's NRC on May 23, 2012, and, at that time he had a prescription for Neurontin for his pain, a walker, and a lower bunk permit. (*Id*. ¶ 60.) Moreover, the medical records from May 23, 2012 until November 20, 2013 indicate that medical personnel, including Physician's Assistant Schwarz, administered and prescribed Neurotin to Plaintiff. (*Id*. ¶ 62; R. 132, Ex. A, Hampton Dep., at 82-84.)

On December 29, 2012, while Plaintiff was incarcerated at the NRC, Dr. Aguinaldo examined him based on his complaint of numbness and tingling below his left knee. (*Id*. ¶ 63.) Dr. Aguinaldo noted during the examination that Plaintiff used a walker and that his left Achilles had atrophied. (*Id*.) Moreover, Dr. Aguinaldo testified that Plaintiff's CCDOC chart was not available and that a follow-up was necessary when the CCDOC chart was made available. (*Id.*, Ex. B., Dr. Aguinaldo Dep., at 92-93.)

On November 20, 2013, IDOC transferred Plaintiff back to Pinckneyville. (Pl.'s Stmt. Facts ¶ 1.) At Pinckneyville, Dr. Vipin Shah discontinued Plaintiff's Neurontin prescription. (Wexford Stmt. Facts ¶ 65.) After Plaintiff complained to a Pinckneyville nurse about his continued leg discomfort and that the prescribed Ibuprofen was not effective, Dr. Shah provided Plaintiff with a six month prescription of Neurontin on January 14, 2014. (*Id*. ¶¶ 68-70.) When IDOC transferred Plaintiff back to the NRC on February 26, 2014, the transfer form indicted that Plaintiff had a prescription for Neurontin through July 2014. (*Id.* ¶ 71.) After IDOC transferred Plaintiff back to Pinckneyville, at an examination on June 19, 2014, Dr. Shah explained to Plaintiff that he no longer had a medical need for Neurontin. (*Id*. ¶¶ 72, 75.) Plaintiff's medical records indicate that in June 2014 Dr. Shah offered Plaintiff an alternative medication to treat his neuropathy that Plaintiff refused. (*Id.* ¶ 75.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Life Plans, Inc. v. Security Life of Denver Ins. Co.,* 800 F.3d 343, 349 (7th Cir. 2015). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "To survive summary judgment, the non-moving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Life Plans, Inc.*, 800 F.3d at 349.

**ANALYSIS**

**I.     Wexford Defendants**

Plaintiff argues that Wexford Defendants Dr. Aguinaldo and Physician's Assistant Schwarz were deliberately indifferent to his serious medical needs while he was incarcerated at Stateville's NRC. "A prison official may be found in violation of an inmate's Eighth

Amendment right to be free from cruel and unusual punishment if she acts (or fails to act) with 'deliberate indifference to [his] serious medical needs.'" *Conley v. Birch,* 796 F.3d 742, 746 (7th Cir. 2015) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Deliberate indifference claims contain both an objective and a subjective component, namely, the inmate must have an objectively serious medical condition and the defendant must be subjectively aware of and consciously disregard the inmate's serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Townsend v. Cooper,* 759 F.3d 678, 689 (7th Cir. 2014).

**A.  Objective Component**

Construing the facts and all reasonable inferences in his favor, Plaintiff has presented evidence establishing the objective component of his deliberate indifference claim because medical personnel at the CCDOC, Stateville's NRC, and Pinckneyville diagnosed and treated his Achilles injury and the pain associated with it. *See Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014) ("A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson."). Specifically, evidence in the record shows that Plaintiff had physical therapy after his Achilles surgery and that CCDOC personnel had prescribed him pain medication, including Neurotin and NSAIDs, for the pain attendant to his Achilles injury. (*Id*. ¶¶ 26-28, Defs.' Ex. I.) Once at Stateville's NRC, Physician's Assistant Schwarz wrote a permit allowing Plaintiff to purchase special shoes from the commissary, prescribed the muscle relaxant Flexeril, and gave Plaintiff a lower bunk permit. (*Id.* ¶ 56.) In addition, Physician's Assistant Schwarz proscribed Neurontin for Plaintiff's Achilles pain on several occasions, including September 25, 2012, November 20, 2012, and

8

April 3, 2013. (R. 132, Ex. C, Schwarz Dep., at 54-55.) Indeed, throughout the relevant time period, medical staff treated Plaintiff's Achilles injury with pain medications, as well as prescribing special accommodations, such as a lower bunk and a walker. Because medical personnel diagnosed and provided treatment for Plaintiff's Achilles' injury, he has established that his medical condition was objectively serious. *See King v. Kramer,* 689 F.3d 1013, 1018 (7th Cir. 2012).

In their reply brief, the Wexford Defendants concede that there is a material factual dispute regarding Plaintiff's claim that he suffers from an objectively serious medical condition. Nonetheless, the Court addresses the Wexford Defendants' arguments made in their opening memorandum for the sake of completeness. In particular, the Wexford Defendants argued that Plaintiff has failed to produce sufficient evidence that his Achilles injury – and the resultant pain – was an objectively serious medical condition due to his self-serving reports of pain. It is well-established, however, that "self-reporting is often the only indicator a doctor has of a patient's condition." *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). In other words, inmates are not required to provide objective evidence of pain in order to establish a serious medical condition for Eighth Amendment purposes. *See id.*; *see also Hayes v. Snyder,* 546 F.3d 516, 523 (7th Cir. 2008). Because Plaintiff has set forth evidence – including his self-reported pain, documentary evidence, and deposition testimony – that CCDOC and Wexford medical staff treated his continued pain and injury, he has established the objective prong of his deliberate indifference claim.

### B. Subjective Component

With respect to the subjective component of the deliberate indifference test, a plaintiff must show that the defendant was aware of and consciously disregarded his medical need. *See Farmer*, 511 U.S. at 837; *Rowe v. Gibson*, 798 F.3d 622, 627 (7th Cir. 2015). "Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers 'blatantly inappropriate' medical treatment, acts in a manner contrary to the recommendation of specialists, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." *Perez v. Fenoglio,* 792 F.3d 768, 777 (7th Cir. 2015) (internal citations omitted). "There is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). In determining deliberate indifference claims, courts examine the totality of the inmate's medical care. *See Walker v. Peters,* 233 F.3d 494, 501 (7th Cir. 2000).

Looking at the totality of Plaintiff's medical care while incarcerated, medical staff provided ongoing treatment for Plaintiff's Achilles injury while he was at both Stateville's NRC and Pinckneyville, which included managing Plaintiff's pain with medications – such as Neurontin, Flexeril, and Ibuprofen – and the ongoing lower bunk accommodation. Plaintiff nonetheless argues that his chronic pain was severe and that Dr. Aguinaldo and Physician's Assistant Schwarz failed to alter his course of treatment, although Plaintiff admits that his pain and disability from his Achilles injury improved after his surgery. Plaintiff first asserts that it would have been appropriate for Dr. Aguinaldo and Physician's Assistant Schwarz to refer him to a pain specialist or for an orthopedic examination. The record reflects that in May 2014

10

medical personnel considered a request to refer Plaintiff for an orthopedic examination, but the medical personnel concluded that an orthopedic examination was not medically necessary. (Wexford Stmt. Facts ¶ 73.) Under the circumstances, Plaintiff's disagreement with his treatment, including the lack of referral to a pain specialist or orthopedist, cannot establish deliberate indifference because neither medical malpractice nor a disagreement with a physician's medical judgment support an Eighth Amendment deliberate indifference claim. *See Estelle*, 429 U.S. at 106; *McGee v. Adams,* 721 F.3d 474, 481 (7th Cir. 2013). Put differently, "[a] medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Sain v. Wood,* 512 F.3d 886, 894-95 (7th Cir. 2008) (citation omitted).

Further, Plaintiff complains that Dr. Aguinaldo did nothing to follow-up and obtain his CCDOC medical records, and that because Dr. Aguinaldo only relied upon Plaintiff's self-reported history, Dr. Aguinaldo's conduct rises to deliberate indifference. Not only is there undisputed evidence in the record that Physician's Assistant Schwarz attempted to get Plaintiff's CCDOC records, as discussed above, but Plaintiff's self-reported history was well-documented and considered by Dr. Aguinaldo, Physician's Assistant Schwarz, and other Wexford medical personnel while treating his Achilles injury.

As to Plaintiff's argument that Physician's Assistant Schwarz and Dr. Aguinaldo failed to provide him with alternative medications instead of the pain medications provided, Plaintiff does not sufficiently explain how this failure was "blatantly inappropriate" or fell below prevailing medical standards, especially in light of the fact that when Pinckneyville medical staff, specifically Dr. Shah, offered Plaintiff an alternative medication for his neuropathy, Plaintiff

11

refused any such medication. *See Perez,* 792 F.3d at 777; *Pyles,* 771 F.3d at 409.

On a final note, Plaintiff argues that the ineffectiveness of Dr. Aguinaldo's and Physician Assistant Schwarz's treatment of his Achilles injury and pain is illustrated by the better treatment he received at the CCDOC. Not only does Plaintiff's argument border on an attempt to provide a medical opinion about what was the necessary treatment under the circumstances, but it does not take into account that CCDOC medical personnel treated Plaintiff immediately after his June 2010 surgery and that by the time Plaintiff was incarcerated at Stateville's NRC, seventeen months had passed since his surgery. In other words, Plaintiff's post-surgical medical care would necessarily be different that his medical treatment over a year and a half later at which time Plaintiff was managing the pain associated with his Achilles injury.

Examining the facts and all reasonable inferences in Plaintiff's favor, he has failed to present sufficient evidence creating a genuine issue of material fact for trial fulfilling the subjective component of his deliberate indifference claim against Dr. Aguinaldo and Physician's Assistant Schwarz. The Court therefore grants the Wexford Defendants' motion for summary judgment.

## II. Defendant Hardy

Next, Plaintiff argues that Defendant Hardy, the Warden of Stateville from December 2009 through December 2012, was deliberately indifferent to his serious medical need – despite well-established legal precedent that prison wardens are "entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009); *see also Arnett v. Webster,* 658 F.3d 742, 756 (7th Cir. 2011). In other words, non-medical administrators, such as Warden Hardy, are entitled to defer to the judgment of prison

health professionals as long as they do not ignore an inmate's serious medical condition. *See Berry v. Peterman,* 604 F.3d 435, 440 (7th Cir. 2010) ("the law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so.").

Here, Plaintiff relies upon his prison grievances to establish that Warden Hardy was deliberately indifferent to his serious medical needs. Plaintiff specifically argues that Defendant Hardy disregarded his serious medical condition because two grievances "sat unreviewed by the warden's office for 10 months." Plaintiff's argument misunderstands the grievance process in Illinois prisons. To clarify, to initiate the grievance process in Illinois, an inmate begins the process by speaking with a prison counselor. *See* 20 Ill. Admin. Code § 504.810(a); *Roberts v. Neal*, 745 F.3d 232, 235 (7th Cir. 2014). "When an informal resolution is not achieved by talking to a counselor, an inmate in Illinois has 60 days from the date of the underlying incident to submit a written grievance to the facility's designated grievance officer." *Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011); *see also* 20 Ill. Admin. Code § 504.810(a). The grievance officer then submits a recommendation to the warden, who is the facility's chief administrative officer ("CAO"). *See Roberts,* 745 F.3d at 235. If the inmate is dissatisfied with the response from the CAO, he can appeal the decision to the Administrative Review Board ("ARB"). *See* 20 Ill. Admin. Code § 504.850(a); *Roberts,* 745 F.3d at 235.

With this procedure in mind, Plaintiff's first example illustrates that his grievance numbered M482 and dated December 16, 2011 – in which Plaintiff stated that he was not receiving his prescribed medications – worked its way through the proper channels and that by

13

February 10, 2012, approximately two months later, medical personnel had concluded that pain medications had been ordered and permits for a low bunk, low gallery, and special shoes had been issued. (R. 59, First Am. Compl. ¶¶ 31-33, Ex. A; IDOC Defs.' Stmt. Facts ¶ 15.) This information is substantiated by evidence in the record that Physician's Assistant Schwarz had examined Plaintiff on January 20, 2012 and had prescribed these medications and accommodations. (Wexford Stmt. Facts ¶ 56.) On February 14, 2012, Defendant Hardy concurred with the February 10, 2012 report, after which Plaintiff appealed this decision to the ARB on March 15, 2012. (First Am. Compl. ¶¶ 34-36, Ex. A; IDOC Defs.' Stmt. Facts ¶ 16.) Thereafter, the IDOC personnel returned Plaintiff's grievance M482 as untimely on March 27, 2012. (First Am. Compl ¶ 36.) Evidence in the record shows that on May 23, 2013, Plaintiff filed a letter regarding his appeal of grievance M482 arguing that it was indeed timely. (Ex. A.) Under the circumstances, Plaintiff's reliance on grievance M482 to show Warden Hardy's deliberate indifference is misplaced because this grievance did not sit "unreviewed by the warden's office for 10 months," but rather Defendant Warden Hardy concurred with the grievance counselor's recommendation within two months of its filing.

Next, Plaintiff points to his grievance numbered M1571 and dated August 7, 2012, in which Plaintiff stated that staff had denied him his medication since his arrival at Stateville's NRC in November 2011 and that he wanted to see a pain specialist.[2] (First Am. Compl. ¶ 38, Ex. B.) Plaintiff also stated in grievance M1571 that Stateville's medical director failed to

---

[2] Contrary to Plaintiff's grievance M1571 in which he stated that staff denied him medication, Plaintiff testified at his deposition that he received Neurontin and Ibuprofen while at Stateville's NRC during this time period. (R. 132, Ex. A, Hampton Dep., at 82-84; *see also* Wexford Stmt. Facts ¶ 62.)

recommend that he not be shackled while being transported. (*Id.* ¶ 38, Ex. B.) On August 9, 2012, a correctional counselor forwarded grievance M1571 to the grievance office for review. (*Id.* ¶ 39, Ex. B; IDOC Defs.' Stmt. Facts ¶ 42.) On June 10, 2013, a grievance officer responded to grievance M1571 stating that the medical restraints were needed when Plaintiff was out on court writs and that Plaintiff was receiving the appropriate medical care. (First Am. Compl. ¶ 40, Ex. B.) On June 18, 2013, the Chief Administrative Officer, then Warden Michael Lemke, concurred with the June 10, 2013 report. (*Id.* ¶ 41, Ex. B.) Again, under these circumstances, Plaintiff's reliance on grievance M1571 is misplaced because Warden Hardy was no longer the Warden at Stateville after December 2012 – approximately five months after Plaintiff filed his August 2012 grievance – and the grievance officer did not send Warden Hardy her recommendation within that time period.

Finally, Plaintiff takes issue with the fact that, as a general practice, Warden Hardy delegated the CAO review of grievances to certain staff members. The practice of delegating the review of grievances is not uncommon within the Illinois Department of Corrections and is permitted under Illinois Administrative Code 504.805(a).

In sum, viewing the evidence and all reasonable inferences in Plaintiff's favor, he has failed to set forth evidence creating a triable issue of fact that Warden Hardy somehow delayed the resolution of his grievances. *See Peterman,* 604 F.3d at 440. The Court therefore grants the IDOC Defendants' summary judgment motion.

## CONCLUSION

For these reasons, the Court grants the Wexford Defendants' motion for summary judgment [99] and the IDOC Defendants' motion for summary judgment [98]. Civil Case Terminated.

**Dated:** February 11, 2016

**ENTERED**

_____
**AMY J. STUEVE**
**United States District Court Judge**